IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM ROUSER,<br><br>             Plaintiff,<br><br>        v.<br><br>JULIA GAMBOA, et al.,<br><br>             Defendants. | No. 2:19-CV-1233-DJC-DMC-P<br><br>FINDINGS AND RECOMMENDATIONS |

       Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Defendants' motion for summary judgment based on lack of exhaustion of administrative remedies. See ECF No. 92. Plaintiff has filed an opposition. See ECF No. 93. Defendants have filed a reply. See ECF No. 94.

       The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See

/ / /

1 | Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the
2 | moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.
>
> Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.

/ / /

/ / /

/ / /

In resolving the summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

## I. BACKGROUND

### A. **Plaintiff's Allegations**

This action proceeds on Plaintiff's verified second amended complaint (SAC). See ECF No. 21. Plaintiff names the following as defendants: (1) Gamboa; (2) Kennerly; (3) Smith; (4) Marquez; (5) Spangler; (6) Gonzalez; (7) Roth; (8) Weyer; (9) Valencia; (10) Brown; (11) Lelewer; and (12) Montoya. See ECF No. 21. All defendants are alleged to be prison officials at California State Prison – Sacramento (CSP-Sac.) and Kern Valley State Prison (KVSP).

In Claim I, Plaintiff alleges Defendants Gamboa, Kennerly, Smith, Marquez, and Spangler were aware of Plaintiff's suicidal ideation and yet did nothing. See id. at 1-2.

In Claim II, Plaintiff asserts that Defendants Gonzalez, Roth, and Weyer removed him from the mental health program in retaliation for having filed an inmate grievance. See id. at 2-3.

In Claim III, Plaintiff alleges that Defendants Weyer and Valencia violated his due process rights by not providing impartial review of an inmate grievance. See id. at 3.

In Claim IV, Plaintiff asserts that Defendants Brown, Lelewer, and Montoya were also aware of Plaintiff's suicidal ideation and did nothing. See id. at 3-4.

3

B.     **Procedural History**

On October 21, 2021, the Court issued an order determining the second amended complaint was appropriate for service as to the following claims and defendants:

> Claims I and IV against Defendants Gamboa, Kennerly, Smith, Marquez, Spangler, Brown, Lelewer, and Montoya for deliberate indifference relating to Plaintiff's suicidal ideation.
>
> Claim II against Defendants Gonzalez, Roth, and Weyer for retaliation.

See ECF No. 30. Concurrently, the Court issued findings and recommendations that all other claims and defendants be dismissed. See ECF No. 29. The findings and recommendations were adopted in full by the District Judge on January 7, 2022. See ECF No. 39.

The Court issued a discovery and scheduling order on March 23, 2022. See ECF No. 54. Pursuant to that order, discovery closed on September 26, 2022, and dispositive motions were due within 90 days of this date. See id. Ultimately, the dispositive motion filing deadline was extended to November 7, 2023. See ECF No. 84. Defendants timely filed the currently pending motion for summary judgment on November 7, 2023. See ECF No. 85. As of July 31, 2024, Plaintiff had not filed an opposition, and the Court issued findings and recommendations that Defendants' motion be granted. See ECF No. 87. A further review of Defendants' motion reflected the lack of a proof of service establishing that Plaintiff had been properly served. On September 5, 2024, the Court vacated the July 31, 2024, findings and recommendations and directed that Defendants' motion for summary judgment be re-served re-filed accompanied by a proof of service. See ECF No. 91. Defendants re-served and re-filed their motion on September 18, 2024. Plaintiff filed an opposition on October 18, 2024. Defendants filed a reply brief on November 15, 2024.

/ / /
/ / /
/ / /
/ / /
/ / /

## II.  THE PARTIES' EVIDENCE

A. **Defendants' Evidence**

Defendants' motion for summary judgment is supported by points and authorities, ECF No. 92-3, a separate statement of undisputed facts, ECF No. 92-4, and the declarations of defense counsel with attached exhibits, ECF No. 92-1.

Citing to portions of the transcript of Plaintiff's deposition and attached exhibits, Defendants assert the following background facts related to Plaintiff's mental health placement at KVSP are undisputed:

> 7. Plaintiff moved to Kern Valley State Prison in May 2017 in order to access a Mental Health Crisis Bed. (Depo. 61:17-18).
>
> 8. Plaintiff attended an Interdisciplinary Treatment Team (IDTT), on May 31, 2017, with Defendants Brown and Lelewer. (Depo. 66:25, 67:1-5, 67:20-25).
>
> 9. An IDTT consists of a psychiatrist, a psychologist, doctors, a counselor, and a custody officer. (Depo. 46:1-5).
>
> 10. The IDTT evaluates an inmate patient and decides what level of care they receive.
> (Depo. 46:15-17, 71:13-17).
>
> 11. During a May 31, 2017, DTT Plaintiff made the statement, that if Correctional Officers tried to beat him while he was handcuffed then he would "tear their heads off." (Depo. 111:11-18).
>
> 12. Defendant Brown removed Plaintiff from the IDTT session and informed him that he would receive a rule violation for the comments. (Depo. 19:12-25, 20:1-22, 73:13-19, 75:10-25, 76:1-3).
>
> 13. Defendant Brown documented the incident at the May 31, 2017, IDTT on Rules Violation Report log number 2861533. (Depo. 19:12-15, Depo. Ex. 3 at 7).
>
> 14. Because of the comments, Plaintiff was found guilty of threatening staff. (Depo. 112:18-24, 114:6-11).
>
> 15. After being removed from the IDTT, Plaintiff attempted to cut his wrist using a plastic pen filler to saw back and forth. (Depo. 69:7-25).
>
> 16. Plaintiff ended up with a superficial injury, which did not require stiches, and medical staff bandaged it with a little tape. (Depo. 87:13-25, 88:1-5).
>
> 17. Plaintiff stayed in the crisis bed placement for anther five days, until June 5, 2017. (Depo. 91:12-25, 92:1-7).

5

18. During the remainder of Plaintiff's stay in the crisis bed program, staff were checking on him every 15 minutes. (Depo. 92:8-11).

19. After he was released from the crisis bed program, he entered the Enhanced Outpatient Program (EOP) at Kern Valley State Prison (KVSP). (Depo. 104:2-6).

20. During his time in EOP at KVSP, Plaintiff worked on his suicidal ideations and felt he had good programs. (Depo. 119:11-25, 120:1-7).

ECF No. 92-4, pgs. 2-4.

Next, Defendants contend the following facts related to Plaintiff's mental health placement at CSP-Sac. are undisputed:

21. Plaintiff transferred to California State Prison- Sacramento, at the EOP level of care, in February 2018. (Depo. 121:3-13).

22. Plaintiff had an IDTT with Defendants Gamboa, Kennerly, Smith, Marquez, and Spangle on June 5, 2018. (SAC at 1:18-21).

23. Plaintiff claims he told these defendants that he planned to kill himself, in five days, after he bought ice cream, a candy bar, a soda, a honey bun, and a half gram of heroin. (Depo. 118:24-25, 119:1-4).

24. Plaintiff was mad that Defendants thought, "he's just playing games with us." (Depo. 139:13-25, 140:1-5).

25. Plaintiff admits he had no immediate plans to commit suicide. (Depo. 165:13-21).

26. On June 13, 2018, Plaintiff took an overdose of heroin and psych medication. (SAC at 1:24).

ECF No. 92-4, pg. 4.

Finally, Defendants assert that the following facts related to exhaustion are undisputed:

28. Plaintiff identifies appeal log KVSP-0-17-2595 as the first grievance he utilized to exhaust administrative remedies for this litigation. (Depo. 29:6-14).

29. KVSP-0-17-2595 relates to a due process complaint with the CDCR staff investigating Plaintiff's rule violation for threatening staff. (Depo. Ex. 4 at 1).

\* \* \*

31. SAC-HC-18-001330 is the second grievance employed to exhaust administrative remedies for this litigation. (Depo. 29:6-14).

\* \* \*

6

   33. Plaintiff filed SAC-HC-18-001330 to address his allegation that Defendant Marquez was deliberatively indifferent to his therapy prior to the IDTT. (Depo. 55:13-23, 56:1-15).

   34. Plaintiff admits SAC-HC-18-001330 is not related to the present lawsuit. (Depo. 56:2-18).

   35. Neither KVSP-0-17-2595 nor SAC-HC-18001330 name Defendants Roth or Gonzalez.

ECF No. 92-4, pgs. 4-5.

  **B.** **Plaintiff's Evidence**

Plaintiff's opposition consists of a single filing – a legal brief with attached exhibits. See ECF No. 93. Plaintiff has not filed a separate statement of disputed facts. Attached to Plaintiff's opposition are the following documents:

   1. An inmate request for interview, Form CDCR-22, dated September 14, 2017.

   2. An inmate request for interview, Form CDCR-22, dated August 27, 2017.

   3. An inmate request for interview, From CDCR-22, dated August 24, 2017.

   4. Plaintiff's inmate grievance, SAC-HC-18-001330.

   5. Institutional Level Response dated July 30, 2018, to Plaintiff's inmate grievance, SAC-HC-18-001330.

   6. Headquarters Level Response dated November 13, 2018, to Plaintiff's inmate grievance SAC-HC-18-001330.

ECF No. 93, pgs. 5-16.

The Court will, as appropriate, also consider Plaintiff's verified second amended complaint as his declaration.

///
///
///
///
///
///

## III.  DISCUSSION

In their motion for summary judgment, Defendants argue among other things that they are entitled to judgment as a matter of law because Plaintiff failed to exhaust administrative remedies prior to filing suit.  See ECF No. 92-3.  For the reasons discussed below, the Court agrees.

Prisoners seeking relief under § 1983 must exhaust all available administrative remedies prior to bringing suit.  See 42 U.S.C. § 1997e(a).  This requirement is mandatory regardless of the relief sought.  See Booth v. Churner, 532 U.S. 731, 741 (2001) (overruling Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)).  Because exhaustion must precede the filing of the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies while the lawsuit is pending.  See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002).  The Supreme Court addressed the exhaustion requirement in Jones v. Bock, 549 U.S. 199 (2007), and held: (1) prisoners are not required to specially plead or demonstrate exhaustion in the complaint because lack of exhaustion is an affirmative defense which must be pleaded and proved by the defendants; (2) an individual named as a defendant does not necessarily need to be named in the grievance process for exhaustion to be considered adequate because the applicable procedural rules that a prisoner must follow are defined by the particular grievance process, not by the PLRA; and (3) the PLRA does not require dismissal of the entire complaint if only some, but not all, claims are unexhausted.  The defendant bears burden of showing non-exhaustion in the first instance.  See Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014).  If met, the plaintiff bears the burden of showing that the grievance process was not available, for example because it was thwarted, prolonged, or inadequate.  See id.

The Supreme Court held in Woodford v. Ngo that, in order to exhaust administrative remedies, the prisoner must comply with all of the prison system's procedural rules so that the agency addresses the issues on the merits.   548 U.S. 81, 89-96 (2006).  Thus, exhaustion requires compliance with "deadlines and other critical procedural rules." Id. at 90.  Partial compliance is not enough.  See id.  Substantively, the prisoner must submit a grievance which affords prison officials a full and fair opportunity to address the prisoner's claims.  See id.

8

at 90, 93.  The Supreme Court noted that one of the results of proper exhaustion is to reduce the quantity of prisoner suits "because some prisoners are successful in the administrative process, and others are persuaded by the proceedings not to file an action in federal court."  Id. at 94.  When reviewing exhaustion under California prison regulations which have since been amended, the Ninth Circuit observed that, substantively, a grievance is sufficient if it "puts the prison on adequate notice of the problem for which the prisoner seeks redress. . . ."  Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009); see also Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) (reviewing exhaustion under prior California regulations).

        Until June 1, 2020, when regulations relating to inmate grievances were amended, a prison inmate in California satisfied the administrative exhaustion requirement by following the procedures set forth in §§ 3084.1-3084.8 of Title 15 of the California Code of Regulations.  Inmates "may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate . . . can demonstrate as having a material adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a); see also Munoz v. Cal. Dep't of Corrs., 2020 WL 5199517, at *6 (C.D. Cal. July 24, 2020).  Under the pre-2020 regulations, the inmate was required submit their appeal on the proper form and was required to identify the staff member(s) involved as well as describing their involvement in the issue.  See Cal. Code Regs. tit. 15, § 3084.2(a).  These regulations required the prisoner to proceed through three levels of appeal.  See Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.2, 3084.7.  A decision at the third formal level, which is also referred to as the director's level, was not appealable and concludes a prisoner's departmental administrative remedy.  See id.  Because this action was filed in 2019, the regulations in place prior to June 1, 2020, apply.

        According to Defendants:

> Here, Plaintiff claims Defendants Brown and Lelewer were deliberately indifferent to his threat of suicide in 2017 when they removed him from an IDTT meeting. (SUF ¶ 4.) Inmate Grievance Log No. KVSP-0-17-2595, however, does not address that issue. Although KVSP-0-17-2595 arises from the same IDTT meeting, the grievance seeks a remedy for an alleged due process violation after Plaintiff received a Rules Violation for threatening staff. Plaintiff does not list Defendants Brown and Lelewer in the grievance and acknowledges Inmate Grievance Log No. KVSP-0-17-2595 is not related to the IDTT hearing but, rather, the

9

> Rules Violation Report from the hearing.
>
> Similarly, Plaintiff claims Defendants Gamboa, Kennerly, Smith, Marquez, and Spangler were deliberately indifferent to Plaintiff's threat of suicide at the June 5, 2018, IDTT. (SUF ¶ 5.) Plaintiff argues he exhausted his administrative remedies for this claim with SAC-HC-18001330.
>
> SAC-HC-18001330, however, could not address any alleged Constitutional violation from the June 5, 2018, IDTT since Plaintiff filed it in May 2018. (SUF ¶ 32.) Plaintiff could not have exhausted his administrative remedies since the grievance he cites to prove exhaustion comes temporally before the events he claims are the constitutional violation. In fact, Plaintiff admits that SAC-HC-18001330 does not relate to claims in this litigation. (SUF ¶ 34.)
>
> Finally, Plaintiff alleges Defendants Gonzalez and Roth removed him from the mental health program in retaliation for having filed an inmate grievance. (SUF ¶ 6.) However, neither grievance that Plaintiff cites for exhaustion purposes names Defendants Roth or Gonzalez. (SUF ¶ 35.) In Inmate Grievance Log No. KVSP-0-17-2595, Plaintiff explains the grievance issue as his right to due process was violated in the hearing for RVR 2861533. Plaintiff alleged that the investigating officer refused to interview Plaintiff's witness and Plaintiff's mental health had an impact on the rule violation. (Rouser Depo, Exhibit 4.) SAC-HC-18001330 only identifies Plaintiff's clinician not Defendants Gonzalez and Roth. (Rouser Depo, Exhibit 5.)

ECF No. 92-3, pgs. 7-8.

The Court finds that Defendants have met their burden on summary judgment of establishing Plaintiff's failure to exhaust administrative remedies prior to filing suit. As Defendants note in their separate statement of undisputed facts, Plaintiff testified at his deposition that he filed two grievances related to the events alleged in the SAC – KVSP-0-17-2595 and SAC-HC-18-001330. Plaintiff concedes that SAC-HC-18-001330 is not related to this lawsuit. KVSP-0-17-2595 relates to Plaintiff's due process claim (Claim III), which has been dismissed in its entirety.

The Court finds that the documents submitted with Plaintiff's opposition, as well as Plaintiff's verified SAC, fail to create a genuine issue of material fact as to exhaustion. Specifically, Plaintiff's requests for inmate interviews, submitted on CDCR-22 forms, do not establish exhaustion related to the claims remaining in this case. Plaintiff's re-submission of documents related to SAC-HC-18-001330 also fails to rebut Defendants' evidence which includes the same documentation. Thus, the undisputed evidence shows that Plaintiff failed to file any grievances with respect to his deliberate indifference claims outlined in Claims I and IV, or his retaliation claim outlined in Claim II. Summary judgment in Defendants' favor for lack of

exhaustion is appropriate.

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that Defendants' motion for summary judgment, ECF No 92, be GRANTED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 5, 2025

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE